## (October 27, 1980)

■ JAMES J. EISERT et al., Appellants, v ERMCO ERECTORS, INC., Defendant. HEAVY LIFT EQUIPMENT CORP., Respondent, v ERMCO STEEL ERECTORS, INC., Defendant.—Motion by respondent Heavy Lift Equipment Corp. for reargument of an appeal from a judgment of the Supreme Court, Queens

County, dated February 9, 1979, or for leave to appeal to the Court of Appeals from an order of this court, dated January 14, 1980, which determined said appeal *(Eisert v Ermco Erectors,* 73 AD2d 927). Motion denied, without costs. On the court's own motion, its decision and order are recalled and vacated, and the following substituted decision is rendered: In consolidated actions, *inter alia,* on certain contracts, plaintiffs in the first above-captioned action (the James Eisert plaintiffs) appeal from a judgment of the Supreme Court, Queens County, dated February 9, 1979, which (1) dismissed their first and second cross claims against plaintiff in the second above-captioned action (Heavy Lift Equipment Corp.) and (2) awarded judgment to Heavy Lift on its cross claim against the James Eisert plaintiffs in the principal sum of $34,730.61. (In its decision, the court said that it was dismissing the third cross claim of the James Eisert plaintiffs, but no such provision appears in the judgment.) Judgment modified, on the law and the facts, by (1) deleting therefrom the provisions (a) dismissing the first and second cross claims of the James Eisert plaintiffs and (b) awarding judgment to Heavy Lift, and (2) adding thereto a provision dismissing the third cross claim of the James Eisert plaintiffs. As so modified, judgment affirmed, without costs or disbursements, and action remitted to Trial Term for further proceedings consistent herewith. (A). Determination of the first cross claim of the James Eisert plaintiffs depends upon the interpretation of paragraph 10 of the undated stipulation, executed in 1974 or 1975, which terminated the parties' Bronx County Supreme Court litigation. Paragraph 10 states that "all obligations owed by Ermco to the partnership that shall be recovered, shall be divided 55% to Carl J. Eisert [the principal of Heavy Lift] and 45% to James J. Eisert. The balance, after partnership recovery, shall be divided according to the proof." It is undenied that from 1968 (and perhaps earlier) and up to June, 1970, there was an *informal* partnership between Carl and James Eisert. They each had a 50% interest in the two corporate entities into whose bank accounts the proceeds of crane rentals to defendant Ermco Erectors, Inc. (Ermco) were being deposited. After June, 1970 there were six corporate entities, three being owned by Carl and three being owned by James. There was also existent, from 1968 to the date of the afore-mentioned stipulation (in 1974 or 1975), a *formal* partnership, known as Eisert Crane Service Co., the sole partners of which were Carl Eisert and James J. Eisert. Although a partnership certificate was filed with the county clerk, this partnership had no bank account. Its name was printed on the "rental agreement" forms, but such forms, when filled in, also bore the typed name of one of the corporate entities, and one of the Eiserts would sign the agreement as officer of that corporation. Prior to June, 1970, all of the moneys received by the Eiserts from Ermco in payment for crane rentals were deposited in the bank accounts of the two corporations in which Carl and James had equal interests. The moneys received from Ermco after that time were deposited, in disproportionate amounts, into the bank accounts of the six corporations. The stipulated figures stated at the opening of the original trial between these parties showed that the total desposits into Carl's corporations were substantially in excess of the billings of those corporations (see *Eisert v Ermco Erectors,* 60 AD2d 903, amd 62 AD2d 1027, wherein this court reversed the judgment entered after the first trial between these parties and granted a new trial). James concedes that, pursuant to said paragraph 10, Ermco's unpaid indebtedness to the Eiserts up to June, 1970, is to be divided 55% to Carl and 45% to himself. He claims, however, that the term "according to the proof", as used in paragraph 10, meant that post-June, 1970 accounts receivable from Ermco were

not to be divided 55-45, but were to be based on the respective billings and receipts of the six corporations, and that the stipulated computations showed that Carl's corporations had been grossly overpaid to the concomitant loss of James' corporations. Heavy Lift argues that the partnership referred to in paragraph 10 was the formal partnership, Eisert Crane Service Co., which was the only *partnership* entity named in the stipulation, and was, by paragraph 4, formally discontinued by the simultaneous execution by Carl and James of "a Certificate of Discontinuance of Business Partners for the partnership under the designation of EISERT CRANE SERVICE CO." Therefore, argues Heavy Lift, the 55-45 split was to be applied to *all* Ermco indebtedness to the Eiserts up to the date of the stipulation (1974 or 1975), and not merely up to June, 1970. A careful reading of the inadequate and confusing record reveals no evidence as to what was meant by the word "partnership" in paragraph 10. There is no revelation of the surrounding circumstances and conversations from which the meaning may be gleaned. Since this is essentially an accounting matter, wherein each brother is equally a protagonist and antagonist, it would be inappropriate to hold that James Eisert must lose his first cross claim because he had failed to prove his case by the preponderance of the evidence, where we can reasonably expect that a new trial will clarify the issues. This is especially so since moneys are being held in escrow and would remain in limbo if the respective interests were not apportioned. The new trial with respect to the first cross claim should focus on the intended meaning of the word "partnership" as used in paragraph 10. We suggest to the trial court that Andrew W. Scrobola, who was the accountant for both of the Eiserts and was their chosen arbitrator in an earlier settlement (as stated in par 6 of the stipulation terminating the Bronx Supreme Court litigation), be subpoenaed as a *court* witness. If the trial court concludes that the post-June, 1970 payments from Ermco were to be divided not 55-45, but according to the respective billings and amounts deposited into the bank accounts of the six corporations, the court must then decide the extent to which the amounts owing to James Eisert's corporations are to be adjusted because of *executed* discounts (actually or tacitly agreed to by both Carl and James) on the amount received prior to the first trial. (B). The second cross claim of the James Eisert plaintiffs alleges, essentially, that a crane owned by one of *James'* corporations had been leased to Ermco and that a *December,* 1970 Ermco check for $22,000 in payment thereof, made payable to Eisert Bros. Equipment Co., Inc., one of Carl's corporations, had been deposited into the bank account of that corporation. It is not clear whether the payee's name originally appeared on the check, or whether the check was issued to "Eisert" with the intent that Carl or James should then fill in the full name of the appropriate corporation. Copies of the agreement as to the rented crane, as well as the $22,000 check, were not available at the time of trial. They were lost because of a fire and other reasons. Here again the record is inadequate to determine the issue. Although the preponderance of the evidence is that the check was deposited in a *Carl* Eisert corporation bank account, it is not clear whether the crane was owned by a *James* Eisert corporation. Since, unlike the first cross claim, the issue is *not* essentially one of accounting, we would ordinarily have concluded that the court on the second trial (which by stipulation of the parties was essentially the transcript of the first trial) was not in error in holding (in essence) that the evidence was equally balanced so that the James Eisert entities had not met their burden of proof. However, the later trial court relied in large part on its conclusion that in December, 1970, there was still "A valid business

partnership * * * and it must thus be concluded that if such check was paid to Eisert Brothers, it was for the benefit of the partnership". Since the issue of whether there was still a "valid business partnership" in December, 1970 (in the sense that all moneys due from Ermco for post-June, 1970 rentals were to be split 55-45) is the very issue to be decided in the first cross claim of the James Eisert plaintiffs, we remand the second cross claim for trial *de novo*. (C). We agree with the trial court's dismissal of the third cross claim of the James Eisert plaintiffs. Despite the fact that, on appeal from the judgment after the first trial, this court held that Ermco owed $63,146.58 to the Eisert entities because parol evidence of discounts on crane rentals could not vary the written terms as to price, James chose to settle his share for only $23,000 (while Carl settled for nothing). In this third cross claim James asserts that he had so settled because he allowed $50,000 in discounts on the *total* Eisert billings of $900,000. James' volunteered gift to Ermco is no basis for a claim against Carl to reimburse him for one half of his beneficence. (D). The trial court awarded Heavy Lift (Carl Eisert's corporation) judgment of $34,730.61 on its cross claim against the James Eisert plaintiffs, based on the court's conclusion that Heavy Lift was entitled to 55% of the $63,146.58, the sum that had been judicially determined to be owing by Ermco to all the Eisert entities. The court held that "by settling his claim with Ermco for $23,000 James Eisert did so to the disadvantage of plaintiffs Carl Eisert and Heavy Lift Equipment Corp.". This was error because (1) the $63,146.58 related to the *unpaid* past indebtedness of Ermco to both sets of Eisert corporations, while the cross claims of the two brothers related to alleged incorrect *inter se* adjustments of *paid* indebtedness of Ermco, and (2) there is no rationale for penalizing James (to the benefit of Carl) for settling a $63,146 joint-Eisert claim against Ermco for $23,000, when in the very same stipulation of settlement, Carl settled for nothing. There should be a new trial as to Heavy Lift's cross claim since there remains the possibility that Carl (or his alter ego, Heavy Lift) may be entitled to a portion of the $23,000, on the theory that it was the ultimate sum paid on common accounts receivable. That issue should be tried together with the cross claims of the James Eisert entities. Damiani, J. P., Lazer, Rabin and O'Connor, JJ., concur.

plaintiffs moved, pursuant to CPLR 2004, for an extension of time within which to make service and to compel defendants to accept such service. Special Term granted the motion upon condition that plaintiffs' counsel personally pay $50 costs to defendants. In view of the minuscule delay of three days in serving the complaint after receiving the letter of defendants' attorney demanding service by return mail and in view of the complexity of the issues involved, the court properly exercised its discretion by granting plaintiffs' motion conditionally. Damiani, J. P., Gibbons, Gulotta and Weinstein, JJ., concur.